IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF IOWA

| UNITED STATES OF AMERICA<br>        Plaintiff,<br><br>v.<br><br>RUBY MONTOYA<br>        Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Criminal No. 4:19-CR-00172 |
|---|---|---|

Supplement to Motion to Withdraw Guilty Plea

Ruby Montoya files this her Supplement to her Motion to Withdraw her Guilty Plea. Notably, this supplement adds a plausible defense to the conspiracy count to which Ms. Montoya pled guilty as well as documentation of the failure of prior counsel to investigate plausible defenses in the cases. Undersigned counsel has reviewed the discovery provided by the government to counsel, attempted with no success to secure additional discovery and reviewed the attorney client files for both defense attorneys Lauren Regan and Angela Campbell. Simultaneously with this supplement, counsel is filing her motion to compel discovery, her motion for permission to share discovery with experts, and her motion for permission to have subpoenas issued and served in order to complete investigation of the defenses for presentation at trial should the court grant Ms. Montoya's motion to withdraw her guilty plea.

I.
Introduction

*May 10, 2017*
*A local Associated Press news article was released today highlighting an 84-gallon oil spill by DAPL in South Dakota. [-327 sitrep 239, May 10, 2017]*

*Tiger Swan response*

1

*Analyst Comment: In regards to the minor leak and the false narrative that there is no spill response for DAPL. Pro-pipeline residents have begun telling locals that the spill was very small, quickly discovered, contained, and cleaned up in order to maintain positive public sentiment.   [-329 sitrep 242, May 15, 2017]*

These quotes highlight two issues. First, within a month of the oil flowing through the pipeline, there was already a leak validating Ms. Montoya's fear that we would not leave anything for the children she was teaching.   Second, if an 84 gallon leak is not a problem and results in no penalties against Energy Transfer Partners, then holes in a pipe that was not yet in operation certainly should not result in federal criminal charges.  The discovery materials are replete with similar dissonance and support Ms. Montoya's motion to withdraw her guilty plea.

## II.

**Additional Evidence in support of Ms. Montoya's fair and just reason for her request**

A.  Ms. Montoya's plea of guilty was not voluntary due to coercion by her former counsel Lauren Regan.

Review of Ms. Regan's file reveals that Ruby Montoya hired Ms. Regan as her attorney, Ms. Regan acted as though she was lead counsel, and Ms. Regan referred to and treated Angela Campbell as local counsel.  From the institutional standpoint, it's understandable that the Court and Ms. Campbell would identify Ms. Campbell as lead counsel.  But for purposes of evaluating Ms. Montoya's fair and just reason to withdraw her plea, it is Ms. Montoya's understanding of who was her lead counsel that is relevant.  Ms. Montoya hired Ms. Regan as lead counsel, and Ms. Montoya looked to Ms. Regan for preparation of her defenses and advice on how to proceed. Exhibits A-D. As a result, because Ms. Montoya looked to Regan for this advice it was Regan's coercion that resulted in her decision to enter a guilty plea.

Review of Ms. Regan's file reveals a joint defense agreement in which Ms. Regan agrees that she has an uncompromising duty of loyalty to Ms. Montoya and no other party. Exhibit A. Ms. Regan did not honor this uncompromising duty of loyalty when she pressured Ms. Montoya to plead guilty in solidarity with Ms. Reznicek. Tellingly, since the filing of the motion to withdraw, Ms. Regan has sought to have undersigned counsel expelled from the National Lawyers Guild (NLG) for prioritizing Ms. Montoya's interests above the movement. A faction of the Guild at the behest of Ms. Regan has taken the position that a lawyer can prioritize a movement and require a client to act in the best interest of the movement including pleading guilty and going to prison instead of investigating defenses and proceeding to trial.[1]

B. Both attorneys failed to investigate Ms. Montoya's plausible defenses.

Ms. Regan's file does not reveal any effort to research legal issues or investigate defenses. Exhibits F-J indicate efforts by Ms. Montoya and others to examine particular defenses, and Ms. Regan failing to respond. Ms. Regan failed to investigate the defenses because of her conflict of interest.

Ms. Campbell's file indicates that she investigated whether Ms. Montoya was the person who committed the crime. Exhibit E confirms Ms. Campbell's investigation. Ms. Campbell likely did not investigate further defenses because she was not the lawyer to which Ms. Montoya asked the questions that should prompt the investigation and likely she was not independently aware of some of the issues that arise in politically motivated allegations of domestic terrorism.

---

[1] Ms. Montoya's allegation against Ms. Regan is the third allegation that undersigned counsel has received that Ms. Regan pressured a client to enter a guilty plea in solidarity with a movement that detrimentally harmed the client. Facts without defendant names related to the East Texas matter mentioned in the Motion to Withdraw are provided in exhibit M-O. Undersigned counsel has sought to address this issue previously. A formal complaint regarding this issue is now pending with the NLG.

The existence of FBI infiltrators had in the no-dapl movement was public knowledge at the time that the lawyers were representing Ms. Montoya. Exhibit K. Tiger Swan's conduct in inciting activists was public knowledge at the time the lawyers were representing Ms. Montoya. Exhibit L.

### III.
### Ms. Montoya asserts that she is actually innocent and presents plausible defenses that should have been investigated.

After review of the discovery, all defenses previously raised in Ms. Montoya's motion to withdraw remain plausible. In addition, there was sufficient documentation in the discovery to estimate the total cost of repairs. As a result, plausible defenses exist that Ms. Montoya is actually innocent of all of the charges against her including the conspiracy charge to which she pled guilty.

A. The total cost does not exceed $100,000 required for Count 1 (Conspiracy to Damage an Energy Facility)[2]

Count 1 charges Ms. Montoya with willfully and knowingly conspiring to knowingly and willfully damage the property of an energy facility involved in the transmission of fuel in an amount exceeding or which would have exceeded $100,000.

Assessing the costs using the additional data found in the discovery reveals a conservative total cost not to exceed $ 73,000 . $12,000 figures are assessed for each hole and $3000 figures are assessed for each charred mark that does not pierce the pipe. Expert Mike Monteith estimates

---

[2] The defenses raised for counts 2-9 in the Motion to Withdraw remain plausible after review of the discovery. There is no change to the substance of the arguments. There is some change in some of the costs, because the damage was even less than expected but the cost difference does not impact the defenses. Those defenses will not be repeated in this supplement.

that repair by composite of two char marks would cost $6,000.  Exhibit P.  This matches an estimate from one of the pipeline technicians for the pipeline company who estimated $3000 for one mark.   Bates # 2192551-002127. It is very possible that the charred marks will not require repair once expert analysis is permitted. For this estimate, if the discovery was unclear, this analysis errs in the government's favor.  As a result, this should be a high figure, and it is plausible that once the data requested by the pipeline estimator is received the total dollar figure will be even less.

From indictment:
430 (counts 2 and 3 on 3/17) – 1 hole – bates 2192551-000028              [$12,000]
240 (counts 4 and 5 on 3/18)  - burned mark no penetration and graffiti [bates page number 2146390-BOONECOBOONE-000006] and 2146390-BOONECOBOONE-000028  [ $3000]
460 (counts 6 and 7 on 4/9/ 2017  )   - cost of box              [google estimate $1000]
460 (counts 8 and 9 on 5/1 or 2) – this hole did not pierce the pipeline, official estimate of repair is                    [$3000]
Relevant conduct:
100 –Cherokee county  - 2 char marks, 1 hole in the pipeline   2192551-000031 [$15,000]
90 – Sioux county – 2 char marks, no report clearly indicates if there are 2 holes, so evaluate as though potentially 2 holes                       [$24,000]
80  -sioux county  no damage to this one. 2146390-CHEROKEECOMIRID-000006 [$0]

SD-305 lincoln county,  1 hole, 1 charred mark  2148989-00000              [$15,000]
SD-245  attempt (5/1)  - no damage, see report below, suspect fled before any damage done$0

Total $ 73,000


B. The Tiger Swan reports in the discovery further support Ms. Montoya's entrapment defense.

    Q- "where do you pull courage?
    A- From the heart, tried to stop the pipeline….(Ruby starts crying) I was a school teacher and we're not leaving them anything…. It's scary." [2661-OM-2192551, serial 5_1A05_01]

"Met with the Des Moines Field Office of the FBI, with the Omaha and Sioux Falls offices joining by conference call. Also in attendance were representatives of the Joint Terrorism Task Force, Department of Homeland Security, Iowa Department of Emergency Services, Iowa Department of Homeland Security and Iowa Department of Wildlife. Topics covered included the current threat assessment of the pipeline, the layout of current security assets and persons of interest. The FBI seemed were very receptive to the information presented to them, and follow-up meetings with individuals will be scheduled soon."  Tiger Swan sitrep 198, March 29, 2017.

Tiger Swan operatives are placed highly enough at the camps to influence leadership. And used that leadership to create division:
"Reporting officer was able to increase divisions between the Native American groups and Hippie group, which is a thinly veiled Marxist commune led by Travis." [-67 Tiger Swan sit rep 4-18-17]

Tiger Swan is working with government law enforcement throughout the protests.  Examples
- From the first day of Tiger Swan contract, IA – "TigerSwan personnel are meeting with the Mason City Police Chief on Monday, September 12th to discuss Tuesday's upcoming protest." [-171 sitrep 001, September 11, 2016]
- By the second day of operations, Tiger Swan had met with Sheriff Denzinger in ND, agreed to sharing of infomation and established a LON for Tiger Swan within the law enforcement joint operation center. [-172 sitrep 002, September 12, 2016]
- Law enforcement included a Tiger Swan Liason in the law enforcement joint operation center for purposes of sharing information. "ND - Excellent comments from lead LEOs (Law Enforcement Officers) today regarding planning and communication from our personnel. Having the LNO (Liaison Officer) in the JOC (Joint Operations Center) (LEO) has been a huge improvement." [174 sitrep 004]
- By day 4 of operations, Tiger Swan was gathering and providing information to law enforcement.
- ND - Meeting with ND Bureau of Criminal Investigation (BCI) regarding video and photo evidence collected for prosecution. Next 24 – Continue building Person of Interest (POI) folders and coordinating with LEO intelligence.
- One of Tiger Swan's goals is destruction of the water protector movement from within:  The internal Standing Rock Sioux affairs will most likely self- destruct from within due to the turbulence between leaders. (or lack of) A special mention to all of the LE Men & Women who made this possible. [-213 sitrep 165, February 24, 2017]
- Nightly meetings with Law Enforcement [-90 sitrep 032 October 14, 2016]
- Fusion centers were established to provide a working location for collaborations between law enforcement and Tiger Swan
  - Reporting that "Fusion Center establishment in progress." [-79 sitrep021 October 2, 2016]
  - Houston DSOC: Briefed Loren Schofield on DSOC methodologies and intel priorities before his trip to North Dakota today. Continued support across all Fusion centers. [-98 sitrep 040 October 22, 2016

- Damage to pipes is considered so insignificant that the regulations even under Obama do not require immediate repair.   : "Protesters claim the Obama Administration is scaling back new safety measures for fuel pipelines in the U.S. because new regulations released Friday dropped the proposal for companies to immediately repair cracks and other problems in their lines.  The new regulations do, however, include requirements for more rigorous inspections of lines in rural areas and new requirements for leak detection systems." [-230 Tiger Swan sitrep 125, January 15, 2017]

Tiger Swan documented Ms. Montoya's heart felt commitment to protecting the climate for our children, documented their connection to law enforcement and documented their immediate knowledge of who caused the damage to the pipes.   The only way this knowledge is possible is through a provocateur informant who was present for the training.   "Montoya is a young female who appears to have been brainwashed."  2551 -13.   Tiger Swan received the same intel as undersigned counsel received about Montoya.  She was being manipulated/coerced/brainwashed.

Because the Government overstepped the line between setting a trap for the "unwary innocent" and the "unwary criminal," Sherman v. United States, 356 U.S. 369, 372, 78 S.Ct. 819, 821, 2 L.Ed.2d 848 (1958), and as a matter of law failed to establish that petitioner was independently predisposed to commit the crime for which he was arrested. *Jacobson v. US*, 112 S.Ct. 1535, 1537(1992).

The Supreme Court in an 8th Circuit case has found that appealing to a higher calling places substantial pressure on an individual. That is exactly what was done to Ms. Montoya.  "On the other hand, the strong arguable inference is that, by waving the banner of individual rights and disparaging the legitimacy and constitutionality of efforts to restrict the availability of sexually

explicit materials, the Government not only excited petitioner's interest in sexually explicit materials banned by law but also exerted substantial pressure on petitioner to obtain and read such material as part of a fight against censorship and the infringement of individual rights." *Jacobson v. US*, 112 S.Ct. 1535, 1542 (1992)  As was explained in Sherman, where entrapment was found as a matter of law, "the Government [may not] pla[y] on the weaknesses of an innocent party and beguil[e] him into committing crimes which he otherwise would not have attempted." Id., at 376, 78 S.Ct., at 822.

Tiger swan working with law enforcement in order to provide law enforcement information.  Subsequent to this case, it was learned that Tiger Swan supported incitement of violence.

Tiger Swan also documented that Ms. Montoya spent time with her spiritual grandmother, Susan Stanton.  From Ms. Stanton's expert position as a Ceremony Keeper and Pipe Carrier, Ms. Stanton provides her analysis of Ms. Montoya's pure heart and commitment to doing good. Exhibit Q.  This expert authority reflects the higher calling that motivated Ms. Montoya and placed her actions in line with the analysis in *Jacobson*.

## IV.
## Conclusion

"Everything I have to say has been said, and I will continue to be truthful in front of a Judge, in front of a jury…. I have my things to say to a court of law."  Ruby Montoya to FBI Agent Brian Engerson and Iowa DPS Justin Waite. [Interview of Montoya ch01_20170724125922 on 7/24/17]

Ruby Montoya's defenses are plausible and are interconnected. Ruby's mental capacity infected her ability to respond to the climate necessity.   Ruby Montoya's religious beliefs permitted her to endure 18 years of physical and mental abuse from her father, those same beliefs

colored her desire to save the Earth and its creatures - An Earth that she had just been released into after her 18 years of imprisonment by her father. The long term abuse has multiple effects on Ruby Montoya. It both causes her to recoil at bullies but also makes her more likely to succumb to the bullying. For years, she did whatever necessary to avoid the abuse of the bully in the house, and so when she is presented again by choices, she chooses the method to avoid the bully – both the bully of the government operative saying that nothing else is working greater direct action is needed; and the bully that is the lawyer Lauren Regan who ordered her to plead guilty in solidarity with her comrade rather than stand trial, a trial expected to expose the very necessity that caused the girls to act.

Respectfully Submitted,

Daphne Pattison Silverman

/s/ Daphne Pattison Silverman
Daphne Pattison (Silverman)
501 N IH 35
Austin, Texas, 78702
512-975-5880
daphnesilverman@gmail.com

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served upon all parties electronically through the CM/ECF system on November 24, 2021.

/s/ Daphne Pattison Silverman
Daphne Pattison Silverman

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br>  Plaintiff,<br><br>vs.<br><br>RUBY MONTOYA,<br>  Defendant. | Criminal No. 4:19-CR-00172<br><br>DEFENDANT MONTOYA'S EXHIBITS IN SUPPORT OF HER SUPPLEMENT TO HER MOTION TO WITHDRAW HER PLEA |

**DEFENDANT MONTOYA'S EXHIBITS IN SUPPORT OF HER SUPPLEMENT TO HER MOTION TO WITHDRAW HER PLEA**

TO THE HONORABLE JUDGE REBECCA GOODGAME EBINGER:

| | |
|---|---|
| Exhibit A | Joint Defense Agreement Initiated by Lauren Regan in 2017 |
| Exhibit B | Attorney Fee Agreement Initiated by Lauren Regan 2017 |
| Exhibit C | Correspondences with Lauren Regan seeking local counsel for Ruby Montoya |
| Exhibit D | Correspondences between Ruby Montoya to her lead counsel, Lauren Regan, dating back to 2017 |
| Exhibit E | Angela Campbell investigating possible defense |
| Exhibit F | Bill Quigley raising question of private security licensing and Ruby Montoya's attempts to investigate with no response from her lead counsel |
| Exhibit G | Ruby Montoya raises question of Environmental Impact Statement with no response from her lead counsel |
| Exhibit H | Ruby Montoya initiating contact between her counselor and her lead attorney, Lauren Regan; Lauren Regan does not follow up with counselor |
| Exhibit I | Bill Quigley raises possible defense with no response from Lauren Regan |
| Exhibit J | Witness raises defense. Lauren Regan dismisses legitimacy with no investigation |
| Exhibit K | Public Knowledge of FBI targeting of Red Fawn Fallis in no-dapl |

Movement
Exhibit L    Public knowledge of Tiger Swan inciting activists
Exhibit M    Lauren Regan goes to East Texas
Exhibit N    Evidence of Austin Police Department provacateurs inducing Occupy Houston protestors to use a lock box called a sleeping dragon to increase charges to felony
Exhibit O    Press release regarding protestors arrested in East Texas with sleeping dragons they brought from Occupy Houston after being taught their use by Austin Police Department
Exhibit P    Pipeline expert estimate for composite repair of two charred spots
Exhibit Q    Letter from spiritual guide Susan Stanton