> Begin forwarded message:
>
> From: Lauren Regan <lregan@cldc.org>
> Subject: confidential
> Date: August 30, 2017 at 4:59:47 PM MDT
> To: Bill Quigley <quigley77@gmail.com>
>
>
> Hi Bill, attached is the current version of the joint defense agreement CLDC is using.  Please review and feel free to offer up any edits/revisions, etc.  If you are ok with it as to form, I'm happy to fill in the specifics for all of our signatures.  Thank you!
> Lauren
> _____
> Assert Your Rights, We've Got your Back
>
> The Civil Liberties Defense Center
> Lauren C. Regan, Attorney at Law
> Executive Director
> 783 Grant Street, Suite 200
> Eugene, Oregon 97402
> 541.687.9180 phone
> Email: lregan@cldc.org
> WWW.CLDC.ORG
>
> FOR MORE INFORMATION OR TO DONATE TO THE CLDC, PLEASE CONTACT US AT  info@cldc.org or donate@cldc.org.  Our website is www.cldc.org.
>
> NOTICE:  This and any attached documents are intended only for the use of the person to whom this is addressed and may contain information that is privileged, confidential, or work product and exempt from disclosure under applicable law.  If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited, and you are hereby requested to telephone the sender immediately about the error and to delete this message and attached documents and destroy any printed copies.

Assert Your Rights, We've Got your Back

The Civil Liberties Defense Center
Lauren C. Regan, Attorney at Law (she/her)
Executive Director
1430 Willamette St. #359
Eugene, Oregon 97401
Unceded Kalapuya land
541.687.9180 phone
Email: lregan@cldc.org
WWW.CLDC.ORG

## JOINT LITIGATION AND CONFIDENTIALITY AGREEMENT
## RUBY MONTOYA AND JESSICA REZNICEK

1. **Scope Of Agreement.**

This Joint Litigation and Confidentiality Agreement ("Agreement"), is effective and binding on each Party to the Agreement as of the date each Party to the Agreement executes a copy of the Agreement. The parties to the Agreement ("Parties") are listed below, and are hereinafter referred to as "clients," the attorneys of record for each client and other support counsel involved in this matter, hereinafter referred to as "attorneys." Furthermore, any other counsel or investigator for any defendant who desires to attend a joint defense meeting or receive joint counsel communications pursuant to this Agreement must become a signatory to the Agreement before being permitted to do so. In the event that the parties to this Agreement desire to jointly engage, for fees or otherwise, counsel, investigators, experts or others to work on behalf of the parties to this Agreement collectively, those persons or entities shall also become signatories to this Agreement before engaging in work on behalf of the parties collectively.

2. **Common Interest In Defense And Applicability Of Joint Defense Doctrine.**

The Parties to this Agreement, attorneys and clients alike, anticipate that the nature of the Matters and the relationship among the clients will present various legal and factual issues common to the clients and the clients share a common interest in defending themselves as political activists. The Parties to this Agreement believe there is mutuality of interest in many issues that may relate to the common defense of the clients in this case. The attorneys joining this Agreement wish to work together on issues common to their clients without waiving any applicable rules of privilege and confidentiality vis-à-vis potentially adverse parties.

It is the Parties' intention and understanding that, beginning on the effective date of this Agreement, (1) the fact that particular communications have been made between Parties to this Agreement, (2) the contents of such communications, and (3) any part of memoranda or other work product containing or referring to such communications, shall remain confidential and protected from disclosure to any third Party (a Party not a Party to this Agreement) by each client's attorney-client privilege, each client's and attorney's work-product doctrine, immunity from discovery production, and the "joint defense doctrine" recognized in such cases as *United States*

v. *McPartlin*, 595 F.2d 1321, 1336-37 (7th Cir. 1979); *Hunydee v. United States*, 355 F.2d 183 (9th Cir. 1965); and *Continental Oil Company v. United States*, 330 F.2d 347 (9th Cir. 1964). As indicated in those cases, sharing of information for mutual benefit is not a waiver of applicable privileges or work product rules relating to discovery obligations. In other words, no sharing of information under this Agreement shall be deemed to be a waiver of any otherwise applicable privilege or rule of production or discovery.

3. **Each Client Understands They Are Represented By Their Own Attorneys Only.**

Each client understands and acknowledges that the client is represented exclusively by the client's own attorneys in this matter. While attorneys representing other clients to this Agreement have a duty not to disclose the information disclosed to them pursuant to this Agreement, they will not act for any Party other than their own clients in these Matters. In other words, each client understands and agrees that this Agreement itself does not and will not create any attorney-client relationship with any other client's attorneys. Each client expressly acknowledges that attorneys representing other clients to this Agreement owe an uncompromising duty of loyalty to their own respective client and to no other Party.

4. **Agreement To Share Information.**

To further the mutual interests of the clients in promoting common defenses and sharing mutually beneficial legal strategies in the face of anticipated litigation or other proceedings referenced above, counsel and their respective clients agree:

    (a)    To share and exchange among themselves and their clients, as each counsel deems appropriate given the unique interests and concerns of his or her client; witness statements and interview summaries, memoranda of law, debriefing memoranda, factual summaries, transcript digests, documents, legal strategies, intelligence, confidences, and other secrets for the limited and restricted purpose of assisting counsel in protecting the rights and interests of their respective, individual clients as political activists;

    (b)    To mark on all materials exchanged pursuant to this Agreement the legend "CONFIDENTIAL AND PRIVILEGED COMMUNICATION, PROVIDED OR PRODUCED PURSUANT TO JOINT LITIGATION AND CONFIDENTIALITY AGREEMENT" or a similar clear

legend in such text as each Attorney deems appropriate; however, the failure of any Attorney to so mark materials exchanged shall not create a presumption that the materials are exchanged outside the protection of the Agreement.  It shall be presumed that materials exchanged between the Parties are exchanged pursuant to this Agreement unless the contrary is explicit and in writing.

5. **Agreement Not To Disclose To Third Parties.**

Each Party to this Agreement agrees it will not reveal to any third Party any joint litigation information received under this Agreement, except as follows:

(a) A Party receiving joint litigation information may communicate that same information to a third Party (a Party not a Party to this Agreement) only with the advance, written consent of the attorney or Party who contributed it to the joint litigation effort.

(b) A Party receiving joint litigation information may communicate that same information to another Party to this Agreement unless he or she receives written or oral instructions to the contrary from the Party who contributed it to the joint litigation effort.

(c) A Party receiving joint litigation information may communicate that same information pursuant to a compulsory order from a court of competent jurisdiction.  Each Party agrees that if it receives any summons, subpoena or similar process, or request to produce information or materials which includes information or material received under this Agreement, it will immediately notify all other Parties and provide not less than five (5) days notice before production, in order to permit other Parties to intervene.  If five days notice cannot be provided, because of the return date of the process, the Party upon which the demand or request is made agrees to make all reasonable efforts to bring a motion to stay the proceedings in order to allow provision of five days notice to other Parties.

(d) A Party receiving joint litigation information regarding the statements of a third Party witness (not a Party to this Agreement) may, if that witness testifies in any proceeding contrary to his/her

prior statements as communicated in the joint litigation information, question that witness during his/her testimony regarding those prior statements.

6. **Client Consent to Use of Information Obtained Independently of, or Derived From, Joint Litigation Information, Including Such Use in Cross-examination by Counsel for Other Clients.**

    (a)  Each Party to this Agreement understands and agrees that information obtained independently of, or derived from, joint litigation information, may be used by any other Party without further consent, including, but not limited to, such use in cross-examination by Attorneys for other clients.[1]

    (b)  If a Party testifies in any future trial or proceedings (regardless of whether testifying on the Party's own behalf or upon request of or having been compelled by another), that Party may be, and hereby consents to being, cross-examined by the Attorney for any other client to this Agreement and further consents to use in such cross examination by the other Party's Attorney of any information obtained independently of, or derived from, joint litigation information.

    (c)  Each Party to this Agreement understands that Attorneys for other clients may further make inquiry on cross-examination of any testifying client concerning any subject that may have been the topic of any joint litigation information. Thus, although cross-examining counsel may not ask a testifying Party, "Didn't you state in a joint litigation meeting that . . .," or "Didn't you tell your Attorney that . . .," if deemed appropriate by cross-examining counsel, she may aggressively inquire concerning any subject area, and may use evidence obtained independently or derived from joint litigation

---

[1] An example may be helpful. After the effective date of this Agreement, Party A to this Agreement may not tell a third Party "Joint Litigation Agreement Signatory B told me (after the Agreement was signed) such and such happened and witness X saw it." However, Party A may first learn of Witness X from joint litigation communications, interview Witness X (thus confirming that Witness X saw such and such happen), and then disclose or otherwise use the information learned from Witness X.

information, so long as the inquiry does not seek disclosure of a specific communication protected by this Agreement.

(d) It is expressly understood that each client has the right to use any information or communication in his possession, including communications otherwise covered by this Agreement, in his defense in any trial where he is a defendant and where no Agreement with the government limits his exposure to charges or punishment at the trial. Furthermore, it is expressly understood that "when each Party to a joint defense Agreement is represented by his own attorney, and when communications by one co-defendant are made to the attorneys of the other co-defendants, such communications do not get the benefit of the attorney-client privilege in the event that the co-defendant decides to testify on behalf of the government in exchange for a reduced sentence." (*United States v. Almeida*, 341 F.3d 1318, 1326 (11th Cir. 2003), quoted with approval in *Murdoch v. Castro*, 365 F.3d 699, 703 fn. 2 (9th Cir. 2004).)

7. **Modification Of Agreement.**

Modification of this Agreement requires all counsel to execute a supplemental Agreement and to obtain the consent of his or her client for execution of the same.

8. **Sharing Of Information Does Not Create Privilege Regarding Facts That Are Not Otherwise Privileged.**

The Parties recognize and agree that facts and other information which are not otherwise privileged from disclosure shall not gain any privilege simply because such facts and other information may be shared in a joint litigation communication. Although such information alone may not be privileged, the joint defense and work product privileges do protect against disclosure of (a) the fact that particular joint litigation communications have been made among Parties to this Agreement, (b) the contents of such joint litigation communications, and (c) any part of memoranda or other work product containing or referring to such joint litigation communications among Parties to this Agreement.

9. **Attorneys' Duty To Zealously Represent Own Client.**

The Parties understand and acknowledge that each attorney-signatory to this Agreement has an obligation to zealously represent his or her own client to the exclusion of all other interests. Thus, before the Matters conclude, each attorney may need to, and is free to take action that may be contrary to the interests of other Parties to this Agreement. These actions include, but are not limited to (a) advising a client to cooperate with the government or to settle an adverse proceeding, (b) generating and disclosing evidence or information to the government or third parties (apart from information protected by this Agreement), and (c) cross-examining other clients at trial or other proceedings, should such clients testify.

10. **Agreement To Withdraw.**

Excluding the disclosure described in Paragraph 4 of this Agreement, any Party who: (a) enters into a cooperation arrangement or other Agreement to assist any enforcement agency of the United States or state or city ("government agency") or private entity or individual, which private entity or individual is adverse to the remaining Parties herein (i.e. an arrangement or Agreement to provide any information to the described agencies or private parties concerning matters within the scope of this Agreement in exchange for any Agreement or promise that said volunteering of information might result in any dispositional benefit to the Party); (b) agrees to testify as a witness on behalf of such government agency or private entity or individual; (c) receives a formal or informal grant of immunity or a compulsion order, pursuant to which he or she expects to provide testimony; or (d) agrees to serve as an informant on behalf of a government entity; with respect to the Matters in any investigation or administrative, civil or criminal proceeding, shall immediately withdraw from and terminate participation in this Agreement, and shall notify all other Parties of such withdrawal and termination of participation. A Party must immediately withdraw in the event that the Party enters into an Agreement with the government as defined above. This Agreement section does not require that the withdrawing Party give a reason for the withdrawal, nor that notice be given of any cooperation with the government agency or private entity or individual; immediate withdrawal and notice of withdrawal and termination from participation in the Agreement shall suffice. Upon withdrawal and termination of participation, the withdrawing Party and his or her attorney shall upon request of the contributing Party return all joint litigation material to the respective attorneys who contributed such material, including copies or summaries or excerpts of the same. Withdrawal

and termination of a Party's participation under this Agreement shall not operate as a waiver or authorize violation of this Agreement. A withdrawing Party remains bound to maintain the confidentiality of information received under this Agreement. Under no circumstances will a Party, directly or through his or her counsel, attend or participate in a joint litigation meeting, discussion or other communication after entering into any cooperation Agreement, as defined above.

**11. Acknowledgement of Limitations on Ability to Use Information Directly.**

Each client acknowledges that the limitation on disclosure of joint litigation information means that, among other things, his or her counsel, in examining another client who later testifies, would not be able to confront the testifying individual with prior statements disclosed pursuant to this Agreement. Each client has concluded that the limitation on his or her ability to disclose such information is outweighed by the benefit from the ability to obtain that information and make indirect or derivative use of it as described above, because of the risk that others would otherwise not contribute information assisting the common effort without this limitation on disclosure.

**12. Not An Agreement To Violate Any Law.**

This Agreement in no way is intended to encourage or commit any violation of law or unlawful interference with any official proceeding or investigation. Each client acknowledges that intention and understanding.

**13. Agreement Fully Explained.**

Each attorney-signatory has fully explained to the respective client the terms of this Agreement to the extent he or she deems necessary and is fully satisfied that the client understands the terms, agrees to abide by them, and that the attorney is authorized by the client to execute this Joint Litigation and Confidentiality Agreement.

**14. Substitution Of Parties Or Attorneys.**

This Agreement shall automatically apply to substitute or associated counsel who may appear on behalf of any client, which substitute or associated counsel shall thereupon become a Party to and be bound by this Agreement. This Agreement shall not be subject to abrogation by any heir, assign or other successor in interest

to any Party hereto. Nor shall such heir, assign or successor in interest waive any privilege or doctrine with regard to information shared by or among the Parties to this Agreement.

### 15. Right To Terminate Participation; Termination Is Prospective Only.

Each Party to this Agreement has the right to terminate his or her participation at any time. Termination shall be effective upon tendering written notice to each attorney-signatory. Termination of a Party's participation under this Agreement shall not operate as a waiver or authorize violation of this Agreement. A terminating Party remains bound to maintain the confidentiality of information received under this Agreement. The privileges and confidences protected by this Agreement will extend to any future litigation to which any or all Parties hereto may be a Party regardless of whether such Parties enter into a similar joint litigation Agreement in connection with such future litigation.

### 16. Potential Conflict Waived.

No Party withdrawing from this Agreement shall claim or assert or support a contention that counsel for remaining clients have a conflict of interest in their continued representation of their respective clients based solely upon participation in this Agreement. Each Party to this Agreement consents to the continuing representation of other Parties by the other Parties' respective attorneys, regardless of the fact that other attorneys may become privy to confidential information shared pursuant to this Agreement. Nor shall a withdrawn Party object to continued representation of the remaining clients by their respective counsel based solely on this Agreement. Nothing contained in this Agreement shall be used by any Party as a basis for seeking to disqualify any attorney from representing his or her client in the Matters or any action arising from it. No attorney-signatory shall be prevented, solely because of his or her participation in this Agreement, from examining or cross-examining any Party who testifies in any proceeding arising from this matter.

### 17. Injunctive Relief Available.

Each Party agrees and consents to immediate injunctive relief being entered against it if it, in any way whatsoever, is attempting to communicate joint litigation information or materials to any third Party in violation of this Agreement.

### 18. Execution of multiple originals.

The Parties agree that this document and any supplemental Agreement(s) may be executed in multiple original copies. It is understood that additional Parties may be added to this Agreement by execution of a supplemental Agreement in the form attached hereto, which supplemental Agreements shall require that there be consent by all to the addition of any new Party, once existing counsel conclude there is an appropriate commonality of interest with any new Party. By signature to such a supplemental Agreement each counsel confirms that they have client consent to same.

        SO AGREED, AS EVIDENCED BY THE SIGNATURES OF EACH COUNSEL BELOW AND AND BY EACH RESPECTIVE CLIENT:

_____
LAUREN REGAN, Attorney for RUBY MONTOYA

_____
BOB REHKEMPER, Local attorney for RUBY MONTOYA

_____
WILLIAM P. QUIGLEY, Attorney for JESSICA REZNICEK

_____
GLEN S. DOWNEY, Local attorney for JESSICA REZNICEK

_____
RUBY MONTOYA, Client

_____
JESSICA REZNICEK, Client

The Parties agree that this document and any supplemental Agreement(s) may be executed in multiple original copies. It is understood that additional Parties may be added to this Agreement by execution of a supplemental Agreement in the form attached hereto, which supplemental Agreements shall require that there be consent by all to the addition of any new Party, once existing counsel conclude there is an appropriate commonality of interest with any new Party. By signature to such a supplemental Agreement each counsel confirms that they have client consent to same.

**SO AGREED, AS EVIDENCED BY THE SIGNATURES OF EACH COUNSEL BELOW AND AND BY EACH RESPECTIVE CLIENT:**

_____
LAUREN REGAN, Attorney for RUBY MONTOYA

_____
BOB REHKEMPER, Local attorney for RUBY MONTOYA

_____
WILLIAM P. QUIGLEY, Attorney for JESSICA REZNICEK

_____
GLEN S. DOWNEY, Local attorney for JESSICA REZNICEK

_____
RUBY MONTOYA, Client

_____
JESSICA REZNICEK, Client