**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** <br> Plaintiff, <br><br> v. <br><br> **RUBY MONTOYA** <br> Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Criminal No. 4:19-CR-00172 |

### MOTION FOR ISSUANCE OF SUBPOENA DUCES TECUM

Defendant Ruby Montoya files this Motion for Issuance of Subpoena Duces Tecum

pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure seeking to require the

following entities to provide responsive documents and things prior to the hearing in this matter:

1. Verizon;

2. AT&T

3. TigerSwan

4. Sunoco

5. Precision

6. Michels

7. Energy Transfer Partners

8. Unicorn Riot

9. Thompson Gray, LLC

10. Leighton Security Services

11. 10 Code Security

12. EH Investigations and Security, LLC

13. North Dakota Human Rights Coalition

1

A copy of the proposed subpoenas are attached hereto as **Exhibit A**.

Upon information and belief, each of the above-named companies has information relevant to Defendant Ruby Montoya's defenses in this matter that Defendant has not been able to procure from the Government.

Rule 17 of the Federal Rules of Criminal Procedure governs the issuance of subpoenas in criminal cases. Subsection (c) provides, in relevant part:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1). "Rule 17(c) implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor." *In re Martin Marietta Corp.*, 856 F.2d 619, 621 (4th Cir. 1988), citing *California v. Trombetta*, 467 U.S. 479, 485 (1984). This Court should issue a subpoena under this rule if the document is requested with adequate specificity to show that it is relevant and admissible. *United States v. Hang*, 75 F.3d 1275, 1283 (8th Cir.1996). A subpoena should not issue on a party's "mere hope" that it will result in more favorable evidence. *United States v. Hang*, 75 F.3d 1275, 1283 (8th Cir.1996).

*United States v. Nixon*, sets forth the standards for issuing a Rule 17(c) subpoena. 418 U.S. 683, 699-700 (1974). In short, the requested information must be (1) relevant; (2) admissible; and (3) specific. *Id.* at 700. While Rule 17(c) does not explicitly require a party to make a motion to the court prior to issuance of a subpoena, the clerk's office has advised that they require a court order to issue a subpoena.

## I.      The Documents Requested are Relevant.

Ms. Montoya had no criminal history nor any pre-disposition to engage in the acts of which she was accused. Instead, she was coerced into doing so by others who took advantage of her mental state. These others are believed to be both government agents and TigerSwan security members or subcontractors, who actively encourage violence to break down the protestors. Evidence of TigerSwan's infiltration into peaceful groups is well-documented. https://theintercept.com/2017/06/03/standing-rock-documents-expose-inner-workings-of-surveillance-industrial-complex/; http://iowainformer.com/politics/2017/06/tigerswan-dakota-access-mississippi-stand-pipeline/; https://www.desmoinesregister.com/story/news/politics/2017/05/28/report-military-style-tactics-used-against-dakota-access-pipeline-protesters/351734001/ (noting "sweeping and invasive surveillance of protesters"). There are strong allegations that TigerSwan collaborates with law enforcement, including the FBI. *Id.*

More compellingly, evidence provided by the Government to defense counsel includes the following evidence of intentional manipulation: "There are outsiders deliberately moving the rioters toward violent action…. Red Warrior Camp is the plans and operations for the rioters which is run by Cody Hall. …Manipulate peaceful protesters through misinformation."  Tiger Swan sitrep 031, October 13, 2016. A former DAPL employee, Kourtni Dockter, alleged that "Some of the acts reported by law enforcement were committed by security company infiltrators disguised as activists." https://hpr1.com/index.php/feature/news/dapl-whistleblower-in-hiding-after-receiving-threats/. Dockter advises that employees were encouraged to incite the protestors and rewarded for doing so.  See attached article, Former DAPL Security Speaks Out Damning Tiger Swan Tactics, June 8, 2017.  In fact, in the discovery provided by the Government, which

is far from complete, there are numerous admissions by TigerSwan that it had personnel attending peaceful rallies. For example, 2192551 Serial 8_1A_173 Sitrep 003 provides that 40 personnel were estimated to have attended a protest in Des Moines, Iowa, where they were attempting to gather intelligence on future protests. Likewise, 20 personnel attended the Nauvoo, Illinois protest, but failed to gather any meaningful intelligence. TigerSwan's situational reports contain admissions that TigerSwan was working with and at the behest of law enforcement. For example, 2192551 Serial 8_1A_174 Sitrep 004, dated September 14, 2016 includes information that TigerSwan was meeting with the North Dakota Bureau of Criminal Investigations regarding video and photo evidence collected for prosecution, and that TigerSwan was continuing to build person of interest folders in coordination with law enforcement intelligence.

Based upon these facts, Defendant is seeking additional direct evidence that reveals that internal actions by TigerSwan led to these events. Furthermore, upon information and belief, the person who taught Ms. Montoya and Ms. Reznicek to weld and encouraged them to commit these acts was a government agent or a person working at the direction of the government. Therefore, the communication between the government and TigerSwan is relevant to this matter.

Upon information and belief, TigerSwan is not the only security firm acting in this manner and it is likely that TigerSwan has contracts with other firms. In fact, Kourtni Dockter revealed that the security firms such as Leighton, Thompson Gray, 10 Code Security, and EH Investigations worked in collusion with each other. https://hpr1.com/index.php/feature/news/former-dapl-security-speaks-out-damning-tigerswan-tactics/. Likewise, TigerSwan's situational reports included in the discovery provided by the Government indicate collusion between TigerSwan and Leighton. One document provides that "in coordination with Leighton who patrol at night, I am determining how many folks we will

need." 2192551 Serial 8_1A_79 Sitrep 021, October 2, 2016. Therefore, the request for information from those companies is relevant to this matter as well.

Furthermore, because the issue is whether Ms. Montoya damaged property belonging to an energy company and it is believed that some of the damaged property belonged to other companies, such as Michels. Those requests seeking information as to which company owned damaged property is relevant to Ms. Montoya's defenses in this matter. Likewise, to calculate the actual damages, Defendant needs to know what was damaged, to whom it belonged, and the cost of repair. This information has not been fully received from the government, despite requests. As such, Ms. Montoya has no alternative but to request the information for calculation of damages directly from the companies alleging they were damaged.

Telephone information from AT&T and Verizon is relevant because there is a court order requiring preservation of phone records. Defendant only received partial records. The government has failed to respond to requests for the entire phone record. Therefore, Defendant has no alternative but to request the entire record directly from the telephone companies.

The identification of individuals requested in the subpoena to the North Dakota Human Rights Coalition is relevant because one of the people there is a TigerSwan informant, whose name and contact information Defendant has been unable to attain is in attendance at the event.

Finally, the information from Unicorn Riot is important because it was Lorenzo Serna who put Ms. Montoya in touch with the relevant actors.

Defendant Montoya is seeking nothing more than the documents necessary to prove her defenses in this matter, as such the subpoena requests are relevant.

## II.       The Documents Requested are Admissible.

Pursuant to Nixon, the admissibility requirement does not apply with "full vigor" when subpoenas are sent to third parties instead of to the government. *Nixon*, 418 U.S. at 699 n.12 Instead, pursuant to *United States v. Iozia*, 13 F.R.D. 335, 338 (SDNY 1952), a defendant need only show "(1) that the documents are evidentiary and relevent; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'..." *Nixon*, 418 U.S. 699-700.

As noted, without these subpoenas the documents required by Ms. Montoya are not reasonably procurable in advance of trial because the government has failed to communicate with defense counsel about these documents and as these are private companies, the documents are not available through a FOIA request. Ms. Montoya cannot be fully prepared without these documents, as they will show the truth of what happened and will prove her defenses against the charges. As set forth more fully above, this is not a fishing expedition, Ms. Montoya seeks only those documents that will support her defenses and they are documents that she cannot obtain in any other manner.

## III.       The Requests are Specific.

Ms. Montoya's requests are specific. She seeks only documents that will prove her defenses. The document requests are limited in time and breadth to ensure relevance to this matter.

6

Wherefore, Defendant respectfully requests that this Court grant this Motion and direct the Clerk of Court to issue the subpoenas attached hereto as Exhibit A.

Respectfully Submitted,

Daphne Pattison Silverman

/s/ Daphne Pattison Silverman
Daphne Pattison (Silverman)
501 N IH 35
Austin, Texas, 78702
512-975-5880
daphnesilverman@gmail.com

## CERTIFICATE OF CONFERENCE

Daphne Pattison Silverman certifies that she has attempted to confer with counsel for the government on the issues raised in this Motion. As of the date and time of filing, defense counsel has not received a response to her request.

/s/ Daphne Pattison (Silverman)
Daphne Pattison (Silverman)

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served upon all parties electronically through the CM/ECF system on November 24, 2021.

/s/ Daphne Pattison Silverman
Daphne Pattison Silverman