Exhibit N: Evidence of Austin Police Department provacateurs inducing Occupy Houston protestors to use a lock box called a sleeping dragon to increase charges to felony

WEDNESDAY, NOVEMBER 07, 2012

## Austin police who infiltrated 'Occupy' movement outed in open court

Two more Austin PD undercover officers assigned to infiltrate the "Occupy" movement were outed last week in open court in Houston, the Austin Chronicle's Jordan Smith reported, including this charming fellow, posing with what appears to be one of the "lockboxes" constructed by APD detectives which caused the protesters to face felony rather than misdemeanor charges:

Smith's story opened:

The saga of the **Austin Police Department**'s infiltration of the **Occupy Austin** movement continued in Harris County court last week when the real names of two undercover detectives assigned to keep an eye on the OA activities were finally revealed.

According to a transcript of the pretrial hearing, APD officers **Rick Reza** and **Deke Moore** – known to Occupiers as "Rick" and "Dirk," respectively – worked alongside already-outted investigator **Shannon Dowell**, a.k.a. "Butch," in keeping tabs on the OA movement throughout the fall and into the winter of 2011. Reza and Moore's names were included in documents turned over by the APD to lawyers representing OA member **Ronnie Garza** and six other protesters now facing felony charges for using a so-called "lockbox" to obstruct a roadway at the Port of Houston during a protest there in December 2011. The issue yet to be resolved is whether Reza, Moore, and Dowell actually induced Garza and the others to use the device, which ratcheted up the obstruction of a road

charge from a misdemeanor offense to a felony punishable by up to two years in a state jail.

According to Garza and other Occupiers, they hadn't considered using a lockbox – a sleeve made of PVC pipe into which protesters can slide their arms and lock themselves together with carabiners and bolts – until the undercover officers suggested it. Moreover, they say that the cops, posing as Occupiers, actually purchased the materials and assembled the devices, delivering them to the protesters for use. Indeed, among the items turned over to the defense during the Oct. 31 hearing in Judge Joan Campbell's Harris County courtroom were a series of photos depicting Dowell and Reza assembling, and goofing around with, the device in a garage. *(Ed note: see above)*

This was quite an undercover operation, don't you think? Perhaps at one of the hearings scheduled early next year the judge can delve further into who made the decision not to disclose the existence of APD undercovers to prosecutors pursuing felony charges against the Occupy protesters. Grits has argued before that the alleged Brady violations are "a bigger deal, even than the alleged entrapment."

# APD Infiltrates Occupy

## Undercover cops revealed in Houston – Acevedo promises review

BY JORDAN SMITH, FRI., SEPT. 7, 2012

print
write a letter

*APD Detective Shannon G. Dowell aka "Butch" (with black and gray beard) monitors an Occupy Austin rally and march on Feb. 3. Occupy Austin was evicted from City Hall plaza later that night.* (Photo by John Anderson)

Did an undercover Austin Police detective induce members of Occupy Austin to commit felony obstruction of a roadway during a demonstration in Houston in December 2011? Or, did he – and two colleagues – intervene in protester plans in order to keep them, and police and firefighters responding to the Houston protest, safe?

Those are among the questions pending before Harris County district Judge Joan Campbell, who is presiding over the prosecution of Austinite Ronnie Garza, one of 15 Occupy protesters from across the state arrested in December during a demonstration at Houston's port, part of a nationwide "Occupy the Port" action. Garza is among a group of seven of those protesters who are now facing felony charges of "possession of a criminal instrument" as a result of that roadblocking action, while the other eight protesters, who were also blocking the road, were charged only with misdemeanor obstruction of a highway. A misdemeanor is punishable by six months in the county lockup; a felony conviction carries a possibility of two years in a state jail.

At issue for the court was the manner in which each group of protesters blocked the road and who shares responsibility for the action. The group facing the misdemeanor charges locked arms while lying across the roadway; the group facing the felony charges linked their arms with the aid of a "lockbox" (sometimes called a "dragon sleeve"). It's essentially a homemade PVC sleeve made to lock protesters together or to a stationary object and is typically made by drilling a bolt through a

width of opaque PVC pipe. Using chain and carabiners, protesters can grasp, or be locked onto, the bolt or each other, their arms hidden snugly inside the pipe. Unless the user releases an arm, the device usually must be cut off, posing risk to the user and, potentially, to the police or firefighters doing the cutting, if booby traps are employed inside the pipe.

It was those concerns about safety, says APD Assistant Chief Sean Mannix, that prompted APD detective Shannon Dowell to get involved last December in constructing a series of lockboxes that the seven protesters were arrested for using at the Port of Houston. Dowell (known to protesters originally as "Butch") was working undercover within the Occupy Austin movement. His real name and occupation were discovered by Garza, investigating a tip that Dowell had gone to high school in Round Rock. Mannix confirmed that the APD actually had three undercover detectives, including Dowell, working inside the movement last year – but the point wasn't to disrupt activities, claims Mannix, but to ensure that any person in Austin wanting to engage in "protected free speech" would be free to do so. (OA activists say the other two undercover cops used the names Rick and Dirk; they haven't yet learned their real names, and the APD declined to reveal them.)

Informants had already told APD that there were some persons inside the movement who were advocating violence, Mannix said, and the idea of having undercover officers attending OA General Assembly meetings and participating in various demonstrations was not to foment trouble or to try to shut down the movement. Instead, he insisted, the strategy was devised solely to ensure the safety of everyone – not only police officers but the protesters themselves. "We are there to protect people who want to engage in protected speech," Mannix said. Dowell and the other two undercover officers had attended General Assembly meetings where the use of lockboxes as acts of civil disobedience were discussed and approved, Mannix said, and Dowell helped to build the devices safely in order to help to keep the protest safe.

## Whose Idea Was It?

But Garza strongly denies that there was ever a vote in the OA General Assembly approving the use of the boxes. "The decision to use the lockboxes did not come from the General Assembly, it came from a small planning group which Dowell was a part of," he wrote in an email to the *Chronicle*. (In the online minutes of the OA General Assembly meetings, lockboxes are rarely mentioned, and there is no recorded vote approving their use in any demonstration.)

Other Occupy Austin activists, including Garza's attorney Greg Gladden, former president of the ACLU of Texas and a member of the National Lawyers Guild, tell a story far different from the APD's official version. According to an affidavit by David Cortez, head of OA's bank actions committee, it was Dowell who encouraged the activists to use the lockboxes. "He was a fairly quiet individual who

never contributed much to our meetings," Cortez recalled of Dowell, "but consistently pulled myself and others aside individually in order to express his frustration with debate and eagerness for more aggressive and provocative actions than our standard peaceful & nonviolent ones," reads the affidavit.

*Police charged Occupy demonstrators for using "lockboxes" at a protest in Houston; defense lawyers say APD provided the devices as a form of entrapment.* *(Photo courtesy of Kit O'Connell)*

According to the affidavit of fellow OA member Yatzel Sabat, possible acts of civil disobedience, "including trespassing, sit-ins or obstruction of passage ways" had been discussed at meetings but it was Dowell who was involved in the initial discussion of using lockboxes, and it was he who "acted more excited about the idea," reads the affidavit. "He volunteered to gather the piping and other materials by purchasing [them] at Lowe's and delivering [them] back to the members of the group that were planning to go to Houston for the demonstration," she continued. "Butch persuaded us to use these arm tubes."

Sabat and Cortez note that the lockboxes or "dragon sleeves" weren't necessary to carry out the protest; the other eight members who blocked one of the roads leading to the port did so simply with their bodies. And without the influence of the APD officers, Gladden says, the seven now facing felony prosecution, including his client Garza, would have done the same. In short, he says, Dowell's actions entrapped his client and the others, inducing them to take an illegal action they otherwise would not have undertaken. "The police knew the kids could be charged with the felony" for using the lockboxes, Gladden says, "but the kids didn't know [that]."

## Judgment Pending

The court must decide whether the activists were entrapped or induced into using lockboxes – which are not illegal to construct or to own, but are illegal when intended for use in a crime – since that in turn allowed the Houston prosecutors to bump the misdemeanor obstruction charge into a felony offense for Garza and his fellow Occupiers.

Based on the transcripts of an Aug. 27 hearing in Campbell's court, the judge has not readily embraced the APD's official story. Dowell was subpoenaed by Gladden to attend the pretrial hearing, and to bring with him all written and electronic records – police reports, text messages, emails, pictures, and notes – related to his Occupy assignment. But Dowell showed up, essentially, empty-handed. He had photos on a thumb drive of the boxes and the woman he delivered them to, he testified, but he somehow lost that drive on the way to court; he had emails on a work computer (and, it seems, on a personal computer as well) and phone messages, but said he had deleted them. He brought with him only "a little note that I made here regarding [an Occupy] meeting," he said. There are no written police reports, he said; since there was no criminal investigation ongoing, there was no reason to write an official report for the APD system, he testified. Judge Campbell did not seem impressed: "When he is sent a subpoena and he doesn't respond and he doesn't come with his own attorney," she said, "I think they lose a little bit of the dignity that they should be carrying themselves with."

At the end of last week's hearing, she told prosecutor Joshua Phanco that the state must produce the names of Dowell's undercover APD cohorts or see the case dismissed. The two other officers are fact witnesses who could help determine whether the police induced the activists' use of the lockboxes. On Wednesday, those names were provided to the court for the judge's private inspection. Also provided were documents related to the APD's undercover mission, though court watchers said that some of those documents were redacted – which did not appear to make Campbell happy. A motion was also filed to quash the subpoenas for the APD's undercover officers, including Dowell, to appear in court, though the judge has not yet ruled on that request. Campbell has again reset the hearing, for Sept. 25, in order to give her time to review all of the relevant documents.

Garza says he isn't surprised the case has been reset – he's been dealing with this for eight months now – but he's upset that the state hasn't yet decided that theirs is a losing case. "I feel that this is excessive on the part of the Austin Police Department and the Houston district attorney's office, how forcefully they're trying to punish a sit-in."

Regardless of the outcome, Mannix says the APD's involvement in Occupy was motivated by a desire to protect free speech, not to impede it. Gladden doesn't see things that way. "It's an old story," he says – as old as the FBI's notorious Counter-Intelligence Program's hunt for subversives, communists, and civil rights activists. "Basically, it's just a chilling effect, that's what they're trying to do."

But APD Chief Art Acevedo insists that his department has no desire to undercut free speech. At the time that the undercover officers were asked to "observe and report" goings-on within OA, dozens of

people were sleeping daily at City Hall, and "criminal activity" among that group had begun – including incidents of assault. The APD "would've been remiss if we hadn't put anyone in there to monitor, report, or to stop any criminal activity," he said. The trouble wasn't coming from the "core Occupiers," he emphasized, and the department has "an absolute duty to protect First Amendment activity."

Beyond that, Acevedo says allegations that Dowell constructed and provided the lockboxes to protesters is under review. "Those activities, as reported, went beyond the scope of the mission" to observe and report "that was established at the executive level," he said. "And we are reviewing the matter, from top to bottom," he concluded, to see where the mission might have gone astray, in order to keep anything like that from happening in the future.

# Undercover Austin police officers aided Houston Occupy protesters

James Pinkerton
Sep. 5, 2012Updated: Sep. 5, 2012 10:20 p.m.



1of21Joshua Phanco, Assistant Harris County District Attorney, appears before District Judge Joan Campbell to discuss the Austin police officers who infiltrated the protest group, and entrapped them into making devices they used in a blocking a road at the Port of Houston on Wednesday, Sept. 5, 2012, in Houston. Defense attorney for Ronnie Garza, of Occupy Austin who joined protest in Occupy Houston, will asked District Judge Joan Campbell to dismiss

charges, saying trio of Austin undercover detectives showed them how to make "Dragon Sleeves," PVC tubes allowed protestors to chain their arms together. Mayra Beltran/Houston Chronicle

•



The bushy-haired, bearded protester called "Butch" didn't say much during the Occupy Austin planning sessions. Instead, he took members aside and pressed them to turn to more aggressive tactics, not a surprising strategy for a national grass-roots movement that has spawned hundreds of arrests.

It turns out that Butch, however, wasn't some wild-eyed activist intent on bringing down the top "1 percent." He was actually Austin police detective Shannon Dowell, working undercover with two other officers who had infiltrated the Austin branch of the protest movement.

"One of the things Shannon especially was doing, he would pull people aside from the general conversation and say debating isn't really the answer. We need to escalate the tactics and move to action," said Austin protester Ronnie Garza. "That's the kind of character we're dealing with."

Garza and six others now face trial on felony charges in Harris County after Houston police arrested him and 19 protesters on Dec. 12 as they tried to block an entrance to the Port of Houston during an Occupy demonstration.

State District Judge Joan Campbell lectured prosecutors during a Wednesday pretrial hearing for Garza about not disclosing the police officers' roles in the case and is now reviewing a large stack of Austin police emails delivered to her court by an Austin assistant city attorney.

Garza and the six other protesters at the December demonstration used "lock boxes," also called "dragon sleeves," to lock their arms inside tubes made of PVC pipe, a tactic designed to prevent authorities from easily removing the restraints while clearing protesters. Detective Dowell purchased and constructed the lock boxes, prosecutors now acknowledge.

***'Clearly Brady material'***

His role in making the devices is a key element in the case against Garza because prosecutors contend that he and other protesters were in possession of a criminal instrument during the protest, which carries a felony charge. Houston fire officials removed the lock boxes from the protesters after their arrest, using a tent to conceal the operation from the news media and protesters who were filming the event.

Campbell delayed Wednesday's hearing until Sept. 25, when she will rule on whether the undercover police files contain information favorable to Garza that prosecutors must share with the defense, as required by the 1963 U.S. Supreme Court case known as Brady vs. Maryland.

But prosecutors told the judge they had no idea the Austin Police Department evidently planted an officer in the movement, until defense attorneys subpoenaed him.

"Had we realized that an undercover officer was involved" and had participated in the construction of the dragon sleeves, "that is clearly Brady material," Harris County prosecutor Colleen Barnett said in an interview after the hearing. "Had we known that, we would have turned it over to the defense."

***Chief defends officers***

Attorney Greg Gladden, who represents Garza pro bono, said his office received an anonymous tip that Dowell had attended a dinner party and bragged about his undercover work with young protesters in Houston.

"I believe he is a government provocateur," Gladden said. "I didn't find out from the DA's office or the police. I found out because Dowell was bragging to the wrong people about setting these kids up, and they tipped us off. It was his big mouth that got him down here."

Austin Assistant Police Chief Sean Mannix attended the hearing and later defended his officers' conduct.

"I have no reason to believe they behaved improperly," said Mannix, who declined to comment on the mission of the undercover officers.

Campbell also expressed concern about the apparent failure of Austin police to inform the Houston Police Department about its ongoing undercover investigation before the arrests at the port. The judge questioned the safety of HPD officers and the public, citing a scenario where a bomb could have been assembled by the undercover agents and handed over to protesters.

Randall Kallinen, a longtime Houston civil rights attorney, is defending port protester Eric Marquez, who has not been able to make bail because he has a pending theft case in Dallas County.

"It's quite incredible that these Austin police officers would do this stuff, but this has been happening in other cities where agent provocateurs are shutting down protests by showing up in menacing clothing, throwing rocks and doing other disrupting tactics," Kallinen said.

Retained or Appointed Counsel

CAUSE NO. [illegible] (4)

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COUNTY CRIMINAL |
| vs. Ronnie Garza | § | COURT AT LAW NUMBER 11 |
| | § | HARRIS COUNTY, TEXAS |

## MISDEMEANOR PLEA OF GUILTY / NOLO CONTENDERE

ADMONISHMENTS, RANGE OF PUNISHMENT, PLEA BARGAIN. [illegible] prior to entering a plea herein [illegible] I am charged with the misdemeanor offense of [illegible] for which the punishment is by a fine not to exceed [illegible], or confinement in the Harris County Jail not to exceed [illegible] or both. I have entered into a plea bargain agreement with the State as follows: [illegible] State and County [illegible]

ACKNOWLEDGMENT OF RIGHTS. I understand that I have the right to have a jury decide my guilt or innocence, and [illegible] and that anything I say could be used against me, and [illegible] attorney [illegible]

[illegible] I understand that upon a plea of guilty/nolo contendere, [illegible] and that if the court [illegible] punishment [illegible] my right to appeal my conviction [illegible] my plea of guilty/nolo contendere [illegible] in the revocation of any [illegible] supervision or parole resulting in additional [illegible] if I am found guilty [illegible] punishment if I am [illegible] convicted, suspended or denied, if [illegible]

I fully discussed this case with my counsel [illegible] each question to my satisfaction.

WAIVERS. With a full understanding of my rights, I knowingly and voluntarily waive each of the rights listed above, and I wish to plead guilty/nolo contendere to the offense alleged in the [illegible], and that any enhancement paragraph is true.

PLEA. In open court I knowingly and voluntarily enter my plea of guilty/nolo contendere to the offense charged in the information and request the Court immediately dispose of this case based upon my plea agreement with the prosecutor. I further understand that if the judge does not follow the plea bargain, I will be allowed to withdraw my plea.

[signature] 2-21-13

Signature of Defendant Date

Retained or Appointed Counsel

ACKNOWLEDGMENT OF COUNSEL. I have consulted with the defendant whom I believe to be competent and to whom I have fully explained all of the matters contained herein including immigration consequences, if applicable.

☐ AS APPOINTED COUNSEL, I affirm that I fulfilled my duties under article 26.04(j), Code of Criminal Procedure, (Vernon 2011) and request the Court allow me to withdraw as attorney of record at the conclusion of these proceedings.

[signature] ______________________ [signature] ______________________

Name of Counsel (please print) Signature of Counsel for the Defendant

PROSECUTOR'S CONSENT AND APPROVAL OF JURY WAIVER. The undersigned attorney for the State of Texas, consents to and approves the defendant's waiver of trial by jury.

[signature] ______________________ 2-2[illegible]-13

Assistant District Attorney [illegible] Date

FINDING OF [illegible]. [illegible] the Court finds the defendant is competent and [illegible] the rights set out above including the right to a jury trial and knowingly, intelligently and voluntarily [illegible] this plea.

[illegible] ACKNOWLEDGMENT [illegible], I informed the defendant [illegible] of the [illegible] and [illegible] of a plea of guilty/nolo contendere [illegible] as defined in the Texas Penal Code, [illegible] to physically produce a firearm, including a [illegible], or ammunition, [illegible] under 18 USC Section [illegible], or Section 46.04(a), Texas Penal Code.

☐ The defendant [illegible] that he or she is a United States citizen. ☐ The defendant informed me that he or she is not a United States citizen, and I [illegible] the defendant [illegible] a plea of guilty or nolo contendere for the offense charged may result in deportation, [illegible] from admission to this country, or the denial of [illegible] under federal law.

ACKNOWLEDGMENT OF PLEA.

☐ The Court finds there is sufficient [illegible] the meaningful exercise of [illegible].

☐ The defendant requests that a presentence investigation report not be made and the Court agrees to the request.

WITHDRAWAL OF APPOINTED COUNSEL. ☐ The Court, [illegible] counsel is appointed, pursuant to Tex. Code Crim. P. Art 26.04(j) (Vernon 2011), [illegible] counsel's oral motion to withdraw, and ORDERS the [illegible] County District Clerk to make an entry in the Justice Information Management System reflecting counsel's motion and the Court's ruling.

[signature] ______________________ [illegible] 2[illegible], 20[illegible]

Judge Presiding Date Signed

This document was translated verbally into English [illegible]

by: ______________________ ______________________

(Print Name of Interpreter) (Signature of Interpreter)

[illegible] [illegible]